Allen, J.
In this case the court of common pleas, which was affirmed by the Court of Appeals, made the following findings of fact:
(1) That no application was made by the defendant to the Industrial Commission of Ohio to come within the provisions of the Workmen’s Compensation Law for the period of time stated in the petition.
(2) That in the payroll report submitted by the defendant to the Industrial Commission on December 8, 1917, the advance estimate payroll was for a period of six months from December 19, 1917, to June 19, 1918, and further that in this case the plaintiff was seeking to recover for a six months’ period of time beginning March 26,1918, and ending September 26, 1918, which was not the period of time for which the estimated payroll was made in the report submitted by the defendant and that the estimated advance premium in said report of $172.50 was an estimated premium in advance for six months from December 19, 1917, to June 19, 1918, and was not an estimated premium for the period of time for which the plaintiff sought to recover in this case.
(3) That on March 22, 1918, the defendant gave notice to the plaintiff of its intention to withdraw from the provisions of the statutes providing for the payment to the Industrial Commission of Ohio of premiums or funds to furnish compensation for *380 injured workmen, and, further, that on said date the said defendant asked the Industrial Commission of Ohio to audit the books of said company and asked for a settlement in full to said date, and that by reason thereof the plaintiff was not entitled to recover in this action.
Upon these facts, as found by the common pleas court, there is only one legal question for this court to consider, namely, whether the employer in defaulting in payment from March 26, 1918, to September 26, 1918, the period of time for which recovery was prayed by the petition, defaulted in any payment required to be made by him. If he did, under the provisions of Section 1465-75, General Code (103 Ohio Laws, p. 83), he is liable civilly for the amount due from him.
Whether the employer defaulted in a payment required to be made by him depends upon the answer to one question, namely: If an employer, after giving notice to the Industrial Commission of intention to default, receives coverage from the Commission, and returns, after default, a report of his actual payroll for the period for which coverage was given, does he confirm and assent to the action of the Commission in giving him coverage, so as to make himself liable for premiums during that period?
The constitutional and statutory provisions involved in the case are found in Section 35, Article II of the Ohio Constitution; Section 1465-45, General Code (103 O. L., 73); Section 1465-69, General Code (103 O. L., 79); and Section 1465-75, General Code (103 O. L., 83). That is to say, this, question arises under the statutes as they were enacted in 103 Ohio *381 Laws, pp. 72 to 92, and not under the law as it exists now, with its later amendments.
It is claimed by the defendant in error that its giving of notice of withdrawal on March 22,1918, ended its obligation to pay premiums subsequent to that time. This view is sustained by the lower courts.
The plaintiff in error, on the other hand, contends that the payment by the employer in March, 1918, of the $172.50, as a part of the payment of the $735.-70, was made in accordance with the law for the advanced estimate for the next six months; that this payment put the insurance in force after the default of the employer and lapse of the risk; that proper coverage was given thereafter to the employer under the provisions of Section 1465-75, General Code, as then in effect, for the period from March 26,1918, to September 26, 1918; and that recovery can therefore be had for the balance due upon the basis of the actual payroll turned in from March 26, 1918, to September 26, 1918.
Both the statute and the legal decisions are silent upon the precise question involved in this case, and we are therefore remitted to logic and common sense for a solution of this problem.
If the defendant did notify the Industrial Commission of its intention to withdraw from the fund, and it could legally withdraw, and if it did not thereafter render itself liable for premiums under the statute, the judgment below must be affirmed.
That the defendant gave such notice was found by the court of common pleas as a matter of fact. But is the fact that the defendant upon March 22, .1918, gave notice to the plaintiff of its intention to withdraw from contribution to the fund decisive of *382 this ease? It was upon this ground that the lower courts gave judgment for the defendant.
There is an element in the facts, however, which seems to have been totally overlooked by the lower courts, that is, that on March 26,1918, the defendant did notify the Industrial Commission of its intention to withdraw from the provisions of the statute, but subsequently, in September, 1918, returned to the Industrial Commission an actual payroll account for the period for which recovery is claimed in the petition.
The pertinent part of this report and a letter from the Laughlin Coal Company, the defendant, mailed on the same day, read as follows:
Plaintiff’s Exhibit No. 2.
The Industrial Commission of Ohio.
Payroll Report.
Risk No. 13480.
Columbus, Ohio, Sept. 17, 1918.
The Laughlin Coal Co., Mineral City, Ohio.
Manual 1001; description of industry appearing in premium advice, coal mines; total payrolls as per reverse side, $24,717.30; rate, $3.45.
Industrial Commission of Ohio, Columbus, Ohio —Gentlemen: We certify that the amounts appearing above as wages earned by our employees in performing the various kinds of work described are a correct transcript of the entries appearing upon our records, for the period from March 26, 1918, to September 26, 1918, with no exceptions or exclusions other than those permitted by the heading of the columns on the reverse hereof.
*383 [Seal of Corporation.]
J. W. Laughlin, Pres.
State of Ohio, Tuscarawas — ss.:
On this 15th day of October, 1918, before me, a notary public in and for said county, personally appeared J. W. Laughlin, who, being first duly sworn, declared that the facts set forth in the foregoing payroll statement are true.
W. L. Hime.
My commission expires December, 1919.
1918.
Detailed Statement Showing Wages Earned, as Appearing on Time and Account Books.
Total Wages
Operation Listed
as Expended in Date of Each
the Manual 1001 Pay Day.
$2,064.97 May 1
2,276.83 May 15
2,437.07 June 1
2.415.76 June 15
2.234.76 July 1
1,820.54 July 15
1,877.18 Aug. 1
2,197.29 Aug. 15
2,070.92 Aug. 31
1,743.94 Sept. 14
1,470.39 Oct. 1
2,107.65 Oct. 15
$24,717.30 '
*384 Plaintiff’s- Exhibit No. 7.
(Copy.)
September 15, 1918.
The Industrial Commission of Ohio, Columbus, Ohio — Gentlemen: Mailed you today payroll report from March 26, ’18, to Sept. 26, ’18. On this report I forgot to place in the estimated payroll for next 6 months, which is ($5,000) five thousand dollars. If possible, please place this in to make the report correct.
Yours truly,
The Laughlin Coal Co.,
J. W. Laughlin.
Under these circumstances, the case is somewhat different from that claimed on behalf of the defendant in error. It is not a case of an actual withdrawal made and consistently maintained; it is a case of notification of withdrawal followed by acts entirely at variance with the giving: of that notice.
When it mailed a payroll report covering the period from March 26, 1918, to September 26, 1918, the defendant in error evidently expected the Industrial Commission to act upon that report. There could be no purpose in sending the report other than that of giving the Industrial Commission the actual facts upon which to base its claim for- insurance. That is the purpose of the payroll report, as set out in the law (Section 1465-45, General Code), and the defendant in error had sent in reports enough to be well acquainted with the purpose of the report. What inference could the Industrial Commission draw from the receipt of the report and letter sent by defendant in error in September, 1918, other than *385 that the employer had acquiesced in the Commission's giving him coverage from March 26, 1918, to September 26, 1918? His-action was entirely inconsistent with the notice of withdrawal made March 8, 1918. The notice was specific to the effect that the employer did not intend to continue the insurance. The giving of the report indicated that employer and Commission were again on the old basis, the employer reporting the payroll upon which the Commission was to calculate the premiums, and the Commission giving the coverage for the period reported. The sending of the report in effect nullified the notice of withdrawal. It established as clearly as can be established by affirmative action that the employer meant to continue under the provisions of the statute.
Moreover, if the employer, after giving notice of intention to default, had signified his intention to become a self-insurer by taking appropriate action under the provisions of the statute, he might have argued with some force that his withdrawal was conclusive, particularly if he had taken such action prior to sending in the report of September 17,1918.
Section 1465-69, General Code, provides, and at the time mentioned provided (103 Ohio Laws, p. 79), that employers of sufficient financial ability to render certain the payment of compensation to injured employes, or the dependents of killed employes, and the furnishing of medical, surgical, nursing, and hospital attention and services and medicines, upon a finding of their financial ability by the Industrial Commission of Ohio, may elect to pay the compensation individually. It also provides that the Industrial Commission of Ohio may require such se *386 curity from these employers as it deems proper and adequate to secure to the injured employes the payment of such compensation.
But in this case the employer took no such action. There is nothing in the record in this case to show that after the sending of the notice of March 8,1918, the Industrial Commission made any finding of the employer’s financial ability to handle his own insurance. No election was made by the employer to pay his own compensation. There is nothing in the record in regard to a requirement of a bond, nor the giving of bond by the employer. ■
Under such circumstances, where an employer notifies the Industrial Commission of his intent to withdraw from the provisions of the statute, takes no steps toward becoming a self-insurer, and subsequently acquiesces in being placed upon a renewal list to the extent of sending in his actual payroll, he confirms and assents to the act of the Commission in reviving his insurance and renders himself liable for the coverage actually received by him during the period for which he rendered the report.
For these reasons, the judgment is reversed.

Judgment reversed.

Wanamaker, Matthias and Bay, JJ., concur.